IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NANCY M. BROOKS, | CASE NO. 4:24-cv-0048 |
| Plaintiff, | DISTRICT JUDGE |
| | DONALD C. NUGENT |
| vs. | |
| | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | JAMES E. GRIMES JR. |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Nancy M. Brooks filed a complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

## Procedural Background

In July 2021, Brooks filed an application for supplemental social security income, alleging a disability onset date in August 2020.[1] Tr. 80. She also filed an application for disability insurance benefits in July 2021 alleging the same onset date. Tr. 74. In pertinent part, Brooks alleged that she was disabled and limited in her ability to work due to a traumatic brain injury, memory loss, poor comprehension, and panic attacks. Tr. 74, 80. The Commissioner denied Brooks's application initially and upon reconsideration. *E.g.*, Tr. 73, 85.

In May 2022, Brooks requested a hearing. Tr. 136. Administrative Law Judge ("ALJ") Reuben Sheperd held a telephonic hearing in October 2022. Tr. 36. Brooks appeared, testified, and was represented by counsel at the hearing. *Id.* Qualified vocational expert Lynn Smith also testified. Tr. 29. In November 2022, the ALJ issued a written decision, which found that Brooks was not entitled to benefits. Tr. 15.

In December 2022, Brooks appealed the ALJ's decision to the Appeals Counsel. Tr. 248–49. In November 2023, the Appeals Counsel denied Brooks's appeal, Tr. 1, making the ALJ's November 2022 decision the final decision of the Commissioner. Tr. 15–35; *see* 20 C.F.R. § 404.981.

---

[1]    "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

Brooks timely filed this action in January 2024. Doc. 1. In it, she asserted one issue for review: "The ALJ violated 20 C.F.R. § 404.1520c during the evaluation of the state agency psychologist's opinions." Doc. 7, at 2.

**Evidence**[2]

1.    *Personal and vocational evidence*

Brooks was born in April 1981, making her approximately 39 years of age on her onset date. Tr. 43. Brooks graduated from high school and earned 138 credit hours online through Colorado Technical University. Tr. 45–46.

2.    *Medical Evidence*

Both before and after Brooks's alleged onset date, she underwent opioid dependence maintenance treatments at Meridian Healthcare, which included monitoring her prescribed Suboxone treatment. *See* Tr. 343–407 (after onset date), 408–437 (before onset date). At her September 2020 opioid dependence maintenance appointment, Brooks reported using opiates since her last visit. Tr. 396. Also, at her September and October 2020 appointments, Brooks reported memory loss after a car accident and stated that she was seeing a neurologist and developing memory aids. Tr. 391–92, 396, 402.

---

[2]    The recitation of medical evidence and testimony is not intended to be exhaustive and is generally limited to the evidence that was cited in the parties' briefs.

In January and March 2020, before Brooks's alleged onset date, Heather Dawson, APRN CNP,[3] conducted psychotherapy sessions at Meridian Healthcare. Tr 420, 432. Over the course of these two appointments, Nurse Dawson assessed that Brooks experienced: opioid use disorder, severe; cannabis use disorder, moderate; post-traumatic stress disorder, chronic; panic disorder; generalized anxiety disorder; and major depressive disorder, recurrent, moderate. Tr 422. Brooks continued to receive opioid dependence maintenance at Meridian through July 2022. *See* Tr. 494.

    *3.   Consultative Examinations*

In March 2022, J. Joseph Konieczny, Ph.D., performed a psychological consultative examination of Brooks. Tr. 472–478. Dr. Konieczny noted that Brooks was quite anxious, occasionally slow to respond or vague, and tearful throughout the evaluation, occasionally sobbing uncontrollably. Tr. 472. He also wrote that Brooks alleged disability due to a traumatic brain injury, anxiety, and being in addiction recovery. *Id.* Dr. Konieczny further detailed that Brooks's reported psychological symptoms included depression since age 25, with daily episodes of crying and anxiety with panic attacks for the past 10

---

[3]     The acronym "APRN" stands for Advance Practice Registered Nurse, which is a title that includes the professional designation of "CNP," which stands for Certified Nurse Practitioner. A Nurse Practitioner has completed advanced training to diagnose and prescribe medication and must have completed a graduate degree program and become board certified. *See* Cleveland Clinic, *Health Library: Articles: Nurse Practitioner*, https://my.clevelandclinic.org/health/articles/24651-nurse-practitioner [**https://perma.cc/FZ8J-RETS**].

years. Tr. 473. Brooks, however, denied any recent thoughts of suicide. *Id.* Dr. Konieczny additionally remarked that Brooks reported that, due to childhood sexual abuse and domestic violence, she had PTSD symptoms, which included intrusive thoughts, nightmares, flashbacks, response to trigger stimuli, avoidant activities, and hypervigilance. *Id.* Brooks also described a history of addiction to pain medications. *Id.* But she reported that she had been sober for three years as of the time of Dr. Konieczny's evaluation. *Id.* Dr. Konieczny wrote that Brooks experienced a traumatic brain injury from a car accident in August 2020, which resulted in memory issues and chronic headaches. Tr. 474.

Dr. Konieczny recorded that Brooks reported daily activities including spending her mornings and afternoons looking for a place to move, taking a walk, interacting with her husband, and trying to relax. Tr. 475. He also included that Brooks stated that she participated in some household chores, but her husband cooked, shopped, and managed the family finances. *Id.* Additionally, he noted that Brooks was minimally involved in outside social activities and that due to a suspended license, she did not currently drive. *Id.* Dr. Konieczny opined that it appeared Brooks required some degree of supervision and monitoring in the management of her daily activities and in handling her financial affairs. *Id.*

On examination, Dr. Konieczny indicated that Brooks was adequately groomed and that her level of motivation to participate in the evaluation was also adequate. *Id.* He further documented that she was frequently overly

5

elaborative, insisted on providing information not requested, and showed indications of undue impulsivity. Tr. 475. He described that Brooks had very poor eye contact throughout the evaluation and that her ability to concentrate and attend to tasks showed indications of impairment. *Id.* Dr. Konieczny had Brooks perform a serial three subtraction test, which she did without error. *Id.* She also recalled three of three objects after a period of five minutes and showed no deficits in her ability to perform logical abstract reasoning. *Id.* Brooks's ability to recall four digits was in the average to high average range. *Id.* Dr. Konieczny noted that Brooks's insight seemed fair and that she had some deficits in her overall level of judgment. *Id.*

Dr. Konieczny administered[4] the Wechsler Adult Intelligence Scale-IV test, which revealed a full-scale IQ score of 80, which placed Brooks in the low average to borderline range of functioning. *Id*. He also administered the Wechsler Memory Scale IV test, which revealed particular deficits in auditory memory, visual memory, immediate memory, and delayed memory. Tr. 476. Overall, Dr. Konieczny stated that Brooks appeared to have a decline in IQ and memory as a result of the traumatic brain injury she reported sustaining in August 2020. Tr. 475–476. He acknowledged, however, that he had no access to "psychometric data regarding pre-morbid levels of functioning." Tr. 475–476.

---

[4]     It appears that although Dr. Konieczny signed off on the evaluation, someone else in his office completed the administration of at least this portion of the examination. *See* Tr. 21, 472.

Dr. Konieczny ultimately diagnosed Brooks with major depressive disorder recurrent, severe, with anxious distress; panic disorder; PTSD; and major neurocognitive disorder due to traumatic brain injury, without behavioral impairment, mild. Tr. 477. Dr. Konieczny indicated that, while Brooks was sincere in her presentation, she was occasionally vague, quite distressed, and overly elaborative. *Id.* Nonetheless, he concluded "it is likely that the above is a reliable reflection of her current situation." *Id.*

Later in March 2022, physical consultative examiner Bradford Jones, D.O., evaluated Brooks's physical conditions. Tr. 482. Dr. Jones noted that Brooks reported that she sustained a brain injury in an August 2020 car accident, which she reported caused difficulty with retaining information and explaining things. *Id.* He further documented that Brooks stated that her brain injury affected her ability to work because of difficulty remembering instructions. *Id.* Dr. Jones reported that Brooks's described her typical activities of daily living to include: doing housework, walking, shopping, and caring for pets. Tr. 483. He noted that Brooks was alert, with good eye contact and fluent speech, and that she had an appropriate mood, clear thought processes, normal memory, and good concentration. *Id.*

4.    *State Agency Consultants*

At the initial level, the state agency consultants, Courtney Zeune, PsyD, and Mehr Siddiqui, M.D., found that there was insufficient evidence to evaluate Ms. Brooks' severe mental health disorder. Tr 75–76, 81–82.

7

On reconsideration, state agency consultant Robert Baker, Ph.D., reviewed the record and found that Ms. Brooks mental residual functional capacity[5] ("RFC") was limited to understanding, remembering, and completing tasks with one- to three-step instructions. Tr 91–92. Dr. Baker also found Brooks capable of working in a non-public, small-group work setting with supportive supervisors, involving occasional, superficial interaction with others and occasional flexibility with breaks when experiencing increased symptoms. Tr 92. Dr. Baker further found that Brooks was able to work in a setting without major or frequent changes to work routine, and that she would need advance notice of major changes, which should be gradually implemented allowing her time to adjust to them. *Id.*

4.   *Function Report*

In a September 2021 Function Report, Brooks alleged memory loss, difficulty focusing or completing tasks, and scattered thoughts since a car accident the previous summer. Tr. 288–289, 293. She stated that her daily activities included making calls, trying to find housing or assistance, caring for her children, cleaning her house, online shopping, watching television, and caring for her husband. Tr. 289, 291. But she described some difficulty completing or remembering to complete certain personal and household tasks

---

[5]     An RFC is an "assessment of" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002). Essentially, it is the Social Security Administration's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

without reminders. Tr. 289–290, 292. Brooks indicated that she was always at home and had no social life anymore. Tr. 292. She stated that she got along well with authority figures except for landlords, and denied ever being fired or laid off from a job because of problems getting along with other people. Tr. 293. Brooks alleged that she did not handle well stress or changes in routine. Tr. 294.

   5.   *Hearing testimony*

   At the October 2022 administrative hearing, Brooks, who was represented by counsel, testified that she lived with her husband, who received permanent disability, and two dogs. Tr. 44–45. Brooks stated that she was working for a temp agency, mostly doing catering work, and noted that, if she was lucky, she could pick up 20 hours of work per week. Tr. 44–45.

   Brooks described that she was involved in a car accident in August 2020, which caused problems with her memory, but that her memory had slowly returned over the last couple of years. Tr. 56. Still, Brooks testified, she struggled with her short-term memory and relied very heavily on writing notes and using the reminder feature on her phone. Tr. 56–57.

   Brooks testified that her anxiety had become hard to manage and that she did not do well around strangers. Tr. 59. Brooks described that her PTSD caused difficulty with sleeping, caused her to avoid people, and made her nervous about her surroundings. Tr. 61–62. Brooks also described mood swings and depression symptoms. Tr. 58–59. She stated that she experienced

increased difficulties with focus and concentration following her accident. Tr. 58. Brooks stated that she worked with a counselor very closely to create coping mechanisms. Tr. 60. She testified that she had been on and off of several different medications over the past couple of years, but she was not then taking any medication because her doctors had difficulty finding a medication that did not interact with her other medications. Tr. 60. When asked what medications she took as of the time of the hearing, Brooks testified that she continued to take Suboxone to manage her opioid addiction, but she wanted to ween off of it as she had been sober for over four. Tr. 61.

Brooks testified that she was able to perform basic household chores, but that seven months before her testimony she was in a deep depression. Tr. 62. Brooks stated that she could run errands for short periods, but she had to push herself or find someone to go with her on longer trips. Tr. 62–63. She indicated that she stayed at home and did not regularly see people. Tr. 63. Brooks reported daily activities of reading, drawing, walking her dog, running, cleaning, organizing, and tidying up, but due to her mental health she sometimes had difficulty doing these things. Tr. 63, 65–66.

**ALJ Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act (the "Act") through September 30, 2021.
>
> 2. The claimant has not engaged in substantial gainful activity since August 30, 2020, the alleged

10

onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: Chron's disease, major depressive disorder, panic disorder, generalized anxiety disorder, post-traumatic stress disorder, neurocognitive disorder, and opioid use disorder. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Par 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant may occasionally climb ramps, stairs, ladders, ropes, or scaffolds; the claimant is limited to the performance of simple, routine tasks and to the making of no more than simple, work-related decisions, conducted in a work setting that requires no more than occasional contact with supervisors, co-workers, and the public, which setting is routine, in that it contemplates few changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 27, 1981 and was 39 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports

a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Par 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 30, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 20–29.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable impairment, or a combination of

12

impairments, that is "severe"? If not, the claimant is not disabled.

3.     Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.     What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.     Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving h[is] lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

## Standard of Review

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."

*Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Analysis**

Brooks presents one issue on appeal to this Court.[6] Doc. 7, at 2. She presents multiple arguments in support of this sole issue, however. *See id.*, at 7–12. All arguments are refuted by the Commissioner, Doc. 9, at 11–17., and none provide a sufficient basis for remand.

Brooks raises one issue for this Court's consideration: "by failing to properly address the mandatory factors of supportability and consistency," the ALJ violated 20 C.F.R. § 404.1520c during his evaluation of the state agency psychologist, Dr. Baker's, opinion on reconsideration. *See* Doc. 7, at 7 ("[t]he ALJ violated 20 C.F.R. § 404.1520c by failing to properly address the mandatory factors of supportability and consistency.").

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5), 416.920c(a), (c)(1)–(5). Supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical

---

[6]     Brooks and her counsel should note that this Court's Local Rule 10.2 directs that "[a]fter the filing of the complaint, all documents filed with the Clerk shall have the name of the District Judge and/or Magistrate Judge to whom the case has been assigned typed or printed immediately under the Court's docket number." Brooks's brief does not comply with this requirement.

opinion[] … the more persuasive the medical opinions … will be." 20 C.F.R.§§ 404.1520c(c)(1), 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The Commissioner must explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining factors. *Id*. "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

As an initial matter, Brooks essentially admits that the ALJ considered the required factors of supportability and consistency. *See* Doc. 7, at 12 (concluding by asking only that the Court find the ALJ's decision was not supported by substantial evidence).

As to supportability, Brooks asserts that, because the ALJ recognized that "Dr. Baker cited liberally to the record in support of his opinions," "the ALJ admitted that with respect to the supportability factor, Dr. Baker had

16

properly supported his opinions by connecting those opinions to the evidence in the record." Doc. 7, at 9. Brooks makes this point to the detriment of her own argument. She is correct—the ALJ did consider the supportability of Dr. Baker's findings. Doc. 6, at 26–27. The ALJ was not, however, required to find that those records ultimately supported Dr. Baker's findings. To the contrary, it was the ALJ's duty to analyze whether the evidence cited by Dr. Baker supported his findings, not to simply wholesale adopt Dr. Baker's findings into the ALJ's ultimate RFC determination.[7] *See* 20 C.F.R. § 404.1520c(a) (explaining how *the ALJ* will consider and weigh medical opinions and prior administrative medical findings); *see also Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 196 (6th Cir. 2020) ("[T]his court does not weigh evidence, assess credibility, or resolve conflicts in testimony–that's the ALJ's job.") (quoting *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th. Cir. 2019)). The ALJ ultimately considered the records cited by Dr. Baker and found that Dr. Baker's opinion was broadly supported by the evidence that he considered in rendering his findings. Doc. 6, at 27. So Brooks's complaint is not that the ALJ failed to consider the supportability factor, but rather that she disagrees with the ALJ's decision. Brooks's argument that the ALJ failed to consider the supportability factor is thus belied by the ALJ's decision.

---

[7]    Brooks does not raise any specific argument asserting that the limitations in the ultimate RFC determination were inappropriate.

As to the consistency factor, the ALJ considered whether a given medical opinion, here Dr. Baker's, was consistent with Brooks's broader record of treatment. Doc. 6, at 26–27 (comparing Dr. Baker's assessment with other evidence of record). Brooks's own argument again undercuts her assertion that the ALJ failed to consider consistency. *See* Doc. 7, at 10 (arguing that "the ALJ stated that Dr. Baker's opinions were inconsistent with [Brooks' record of substance abuse management]".). The ALJ looked to "other treatment records" and "elsewhere in the record," to compare whether Dr. Baker's mental RFC findings were supported by the record as a whole. *Id* at 27. This is exactly what the ALJ is required to do.

The fact that Brooks disagrees with the ALJ's analysis and conclusions related to supportability and consistency does not mean the ALJ failed to comply with the applicable regulation. To the contrary, the ALJ articulated a detailed evaluation of both the supportability and consistency factors as required by 20 C.F.R. § 404.1520c. *See* Doc. 6, at 26–27. Additionally, Brooks has not provided any citation to controlling or persuasive sources to support an argument that the ALJ's discussion of supportability and consistency was somehow insufficient. Brooks sole captioned argument is thus meritless and does not provide any basis for remand.

The remainder of Brooks arguments demonstrate that her actual argument is that the ALJ's decision was not supported by substantial evidence. *See* Doc. 7, at 10–11; *see also* Doc. 7, at 12 (asking the Court to "find the decision

18

of the ALJ was unsupported by substantial evidence"). Because such argument is not contemplated by Brooks's sole legal issue raised, the Court need not consider it. *See* Doc. 4, at 3 ("Each introductory heading in the Argument or Analysis section of a brief must correspond to the argument presented under the heading. Failure to comply with this requirement may result in (a) waiver of the arguments in the heading and in the text following the heading; (b) striking of the offending brief; and (c) other appropriate sanctions. Similarly, bald assertions of error–those unsupported by explanation and argument–will be deemed waived.").

Even if the Court were to consider Brooks's remaining arguments, they are meritless. Seemingly as an aside, Brooks says that the ALJ erred by "dismiss[ing] Dr. Konieczny's examination findings." Doc. 7, at 10. Brooks points to Dr. Konieczny's expertise and asks: "If the ALJ was simply going to reject [Dr. Konieczny's evaluation] due to a lack of mental health evidence anyways, then why would his exam be ordered in the first place." Doc. 7, at 11. It is not this Court's role to speculate about what might support Brooks's suggestion of error. The ALJ's finding that Dr. Konieczny's report was unpersuasive was entirely within the realm of the ALJ's duties. *See e.g.*, 20 C.F.R. § 404.1520c(a) (explaining how the ALJ *will* consider and weigh medical opinions and prior administrative medical findings) (emphasis added). Brooks is essentially asserting that the ALJ was obligated to give certain weight to Dr. Konieczny's opinion simply because he was a state consultative examiner. This

is not so. The ALJ evaluated the persuasive value of Dr. Konieczny's report, just as he was obligated to do with all medical opinion evidence and found it only partially persuasive. Tr. 27. And, as the ALJ also noted, Dr. Konieczny's consultative report is the only "full-scale mental status examination" and some of the actual testing was not conducted by Dr. Konieczny. Tr. 21. Brooks provided nothing to show that the ALJ erred in his evaluation of Dr. Konieczny's report.

Brooks includes several additional assertions in her brief's final paragraph:

> Dr. Baker was the only mental health source of record to provide specific mental health opinions. Dr. Baker based his opinion primarily on the detailed report completed by Dr. Konieczny. The ALJ omitted Dr. Baker's more disabling opinions simply because Dr. Baker allegedly overstated Ms. Brooks' abilities to a minimal degree. Yet, the ALJ never once attempted to connect the dots. The ALJ did not attempt to explain how the record contradicted the omitted limitations.

Doc. 7, at 11. Because this paragraph does not all relate to the sole captioned argument that the ALJ failed to analyze the supportability and consistency of Dr. Baker's opinion, s*ee* Doc. 7, at 2, the Court need not consider it. *See* Doc. 4, at 3

But even if these arguments were considered, they are meritless. These arguments appear to be based on Brooks's belief that ALJ was required to explain each piece of evidence that supported his decision related to Dr. Baker's findings. But the ALJ need not discuss each piece of evidence for his

decision to be supported by substantial evidence. *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for the ALJ's decision to stand."). And Brooks' argument that the ALJ failed to "connect the dots" is belied by the ALJ's decision, which provided several paragraphs of detailed comparison between the medical record and each of Dr. Baker's opinion and concluded by specifically articulating what aspects of that opinion were inconsistent with other evidence and why. *See* Tr. 27.

Brooks' final paragraph also asserts that the ALJ's evaluation of Dr. Baker's opinions was cursory. This argument does not include any record citation and includes only one case citation. Tr. 7, at 11. Her argument is thus itself cursory and the Court need not address it further. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted). But, even if the Court did address this argument, it lacks merit. As the Court's analysis above demonstrates, there was nothing "cursory" about the ALJ's decision. The ALJ articulated the required factors of supportability and consistency and rendered a decision supported by substantial evidence.

**Conclusion**

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: August 9, 2024

>                   */s/ James E. Grimes Jr.*
>                   James E. Grimes Jr.
>                   U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).